389 So.2d 31 (1979)
John O. CLAY et al.
v.
Robert D. CLAY.
No. 64818.
Supreme Court of Louisiana.
November 29, 1979.
Dissenting Opinion October 8, 1980.
*34 Burt W. Sperry, Thomas E. Richard, Shotwell, Brown & Sperry, Monroe, for plaintiffs-applicants.
Edwin K. Theus, Jr., Theus, Grisham, Davis & Leigh, Monroe, for defendant-respondent.
CALOGERO, Justice.[*]
Plaintiffs instituted a petition for a writ of quo warranto against a non-resident in a summary proceeding and attempted service under Louisiana's long arm statute (R.S. 13:3201, et seq.). The trial court's judgment for plaintiff on the merits was set aside by the Court of Appeal after that court concluded that defendant's exception to the jurisdiction of the trial court should have been sustained. The Court of Appeal ruled that Louisiana's long arm statute cannot be used to obtain personal jurisdiction over a non-resident in a summary proceeding at least where a defendant is not afforded the minimum delays he would be entitled to in ordinary proceedings.
We granted writs upon plaintiff relator's application to review that determination, prompted in part by the argument that defendant received notification of the suit and probably had a reasonable opportunity to appear and defend, and in addition the trial was recessed for two days to allow the defendant to gather and present evidence.
For reasons closely akin to those set out by the Court of Appeal we affirm their sustaining the exception to the jurisdiction over the person of the defendant, but we reverse their dismissal of the case and remand to the district court to allow plaintiffs an opportunity to attempt service of process anew. For a recitation of the facts and proceedings in the lower court see the appendix attached to this opinion.
As this case involves an attempt to bring a quo warranto action as a summary proceeding under the long arm statute, we begin with a discussion of summary and ordinary proceedings and the distinctions between the two. Summary proceedings are those which are conducted with rapidity *35 within the delays allowed by the court, and without citation and the observance of all formalities required in ordinary proceedings. C.Civ.P. art. 2591. "More than one hundred and twenty-five code or statutory provisions permit the use of summary procedure in special cases." Comments (a) C.Civ.P. art. 2592. Generally summary proceedings are allowed in instances where the issue to be resolved is narrow and/or the need for rapid adjudication is great.
Summary proceedings are commenced by the filing of a contradictory motion or by a rule to show cause except as otherwise provided by law. C.Civ.P. art. 2593. "Citation and service thereof are not necessary in a summary proceeding. A copy of the contradictory motion, rule to show cause, or other pleading filed by the plaintiff in the proceeding, and of any order of court assigning the date and hour of the trial thereof, shall be served upon the defendant." C.Civ.P. art. 2594.
The writ of quo warranto, although required to be instituted by petition, is an extraordinary remedy which may be but does not necessarily have to be tried summarily. Plaintiff may choose to bring the quo warranto action as an ordinary proceeding. C.Civ.P. art. 3781 and Comment (b) thereunder. The writ when ordered may be signed by the clerk under the seal of the court, or it may be issued and signed by the judge without further formality. C.Civ.P. art. 3781. With respect to a writ of quo warranto instituted as a summary proceeding, the Code of Civil Procedure requires the court to set a hearing not less than two nor more than ten days after service of the writ, although upon a proper showing the court may assign the matter for hearing less than two days after service of the writ. C.Civ.P. art. 3782.
The respondent in a quo warranto proceeding is required to show by what authority he claims or holds public office, or office in a corporation. C.Civ.P. art. 3901. The writ of quo warranto instituted as a summary proceeding does not prompt the service of citation. Defendant is thus not told that he must comply with the demand contained in the petition or make an appearance by filing a pleading or otherwise, but rather is merely directed to show cause why the relief sought by his opponent should not be granted. The Code of Civil Procedure, Article 3783, does however require that a written answer to the petition be filed[1] not later than the time fixed for the hearing.[2] It is tried by preference over ordinary proceedings without a jury (C.Civ.P. art. 2595) and may result in a judgment forbidding the defendant from holding or claiming an office, declaring who is entitled to the office, or directing an election when necessary. C.Civ.P. art. 3902.
In contrast to summary proceedings, ordinary proceedings require citation and service thereof (C.Civ.P. art. 1201) and allow more time for the hearing of exceptions and other pleadings. The citation, signed by the clerk of court and accompanied by a certified copy of the petition, must contain, among other things "a statement that the person cited must either comply with the demand contained in the petition or make an appearance, either by filing a pleading or otherwise in the court issuing the citation within the delay provided in Article 1001 [fifteen days] under penalty of default." C.Civ.P. art. 1202. A preliminary default may be confirmed after two days from entry of the judgment of default. C.Civ.P. art. 1702. A default judgment may not be taken against a person *36 who has not received citation and service thereof. see Succession of Barron, 345 So.2d 995 (La.App. 2nd Cir. 1977), citing C.Civ.P. art. 1201.
Jurisdiction over a person who has not submitted or waived objection, be it in connection with ordinary or summary proceedings, is based upon service of process. C.Civ.P. art. 6. The service of process contemplated by C.Civ.P. art. 6 "includes either personal or domiciliary service on the defendant." Comments (f) C.Civ.P. art. 6. Personal service, "made when a proper officer tenders the citation or other process to the person to be served" (C.Civ.P. art. 1232) "may be made anywhere the officer making the service may lawfully go to reach the person to be served." (C.Civ.P. art. 1233). "Domiciliary service is made when a proper officer leaves the citation or other process at the dwelling house or usual place of abode of the person to be served with a person of suitable age and discretion residing therein as a member of his domiciliary establishment." C.Civ.P. art. 1234. This personal or domiciliary service may be made upon a representative of another by appointment of court,[3] by operation of law,[4] or by mandate. C.Civ.P. art. 1235.[5]
Comment (g) to C.Civ.P. art. 6 notes that "this article is broad enough to include the extension of the limits of jurisdiction over the person recently made by McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)." To comport with constitutional requirements, personal jurisdiction over a non-resident depends upon minimum contacts the defendant has with the state which indicate that he has purposely availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws. Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); Boykin v. Lindenkranar, 252 So.2d 467 (La.App. 4th Cir. 1971).
Jurisdiction over the status of individuals, including in some instance a non-resident may also be exercised by Louisiana courts. C.Civ.P. art. 10(6), (7). And personal jurisdiction may be exercised over a non-resident as to a cause of action arising from the non-resident's ownership interest in property within the state,[6] transacting business in the state and certain other conduct. R.S. 13:3201.[7]
*37 Louisiana's statutory (and only) means of effecting service of process on the non-resident such as Robert Clay in this suit is by compliance with the so called long arm statute, R.S. 13:3201-3207, a statute adopted by this state to permit the courts of Louisiana to tap the full potential of in personam jurisdiction over non-residents consistent with the due process clause of the fourteenth amendment. Comment (a) R.S. 13:3201, Adcock v. Surety Research and Investment Corporation et al., 344 So.2d 969 (La.1977). Just as personal jurisdiction over residents cannot be maintained without valid personal or domiciliary service as required by law, personal jurisdiction over non-residents is fully dependent upon strict compliance with the long arm statute's procedural requirements. As we stated as recently as 1975 in Ray v. South Central Bell Telephone Company, 315 So.2d 759 (La.1975), "The word shall in R.S. 13:3204 setting forth the methods of service, means that the provisions of this section are mandatory." See also Bickford v. Lutz, 339 So.2d 1268 (La.App. 3d Cir. 1976). Only when plaintiff's counsel sends to the defendant by registered or certified mail a certified copy of the citation and of the petition in a suit under the long arm statute does such service have the same legal force and validity as personal service made on the defendant within the state. R.S. 13:3204.[8]
The only difference in the effect between ordinary citation (requiring fifteen days in which to answer) and the long arm citation, is that the long arm statute does not allow a default judgment until thirty days after filing in the record of an affidavit indicating that the process was mailed or delivered to the defendant as required by the statute.[9] As is indicated in the comment (b) to R.S. 13:3205 "The longer delay for answering allowed in this section, and the requirement of proof of notice to the defendant through mail or by delivery, lend strong support to the constitutionality of R.S. 13:3201 through 13:3207."
Therefore personal jurisdiction over a non-resident obtained by use of the long arm statute may not attach if the service of process falls short of R.S. 13:3204's requirements. And such is the case in connection with the type of service customarily employed in summary proceedings, namely service of a certified copy of the contradictory motion or rule to show cause with attached order (and without citation).
*38 This is not to say that once personal jurisdiction attaches by compliance with the long arm statute through service of process which includes citation (and this ordinary proceeding is available in quo warranto proceedings, see C.Civ.P. art. 3781), that elements of summary proceedings might not thereafter be permissible or in order. For instance after defendant has answered he may be noticed or ruled into court and the matter tried preferentially. Likewise incidental rules or motions in connection with the litigation will be disposed of summarily.
When therefore we turn to the dispositive question in this case we conclude that personal jurisdiction did not attach over the defendant herein because the service of process upon which plaintiff relies did not comport with R.S. 13:3204. The instrument mailed to the defendant did not include a citation, but rather consisted of a certified copy of the petition with attached order fixing the matter for hearing, the amended petition and the writ.
Plaintiffs contend, however, that even if the service of process was not sufficient to attach personal jurisdiction defendant waived his exception of insufficiency of service of process and lack of personal jurisdiction by submitting to the jurisdiction of the court.
After defendant's exception to the court's jurisdiction was overruled he notified the trial court through counsel (defendant never appeared before the trial court in person) of his intention to apply to the Court of Appeal for supervisory writs and asked the trial court to stay the proceedings pending a decision of the Court of Appeal on that application. The trial judge gave defendant nine days in which to seek writs but denied the request for a stay and announced that he would proceed with the hearing. At that point defendant availed himself of C.Civ.P. art. 7 and filed an answer. Plaintiff contends that the request for a stay and/or for the later answer constituted a submission to the court's jurisdiction, and/or waiver of objections thereto.
Defendant's request for a stay was merely incidental to the application for supervisory writs by which he was protesting the court's ruling on his exception to the jurisdiction. This was surely no waiver of objection or submission to the jurisdiction.
We also conclude that the answer filed under these circumstances did not subject defendant to the jurisdiction of the court.
Defendant's answer came after his exception to the jurisdiction had been overruled and his request for a stay of the trial pending application for writs had been denied. He surely cannot be required to forego answering and defending the quo warranto proceeding on the merits in order to avail himself on later appellate review of a meritorious exception to the jurisdiction which had been erroneously overruled by the trial judge.
Equally significant, Article 7 of the Code of Civil Procedure[10] provides that even an answer filed at the same time as an exception *39 to the jurisdiction does not constitute a general appearance if the answer is required by law. And C.Civ.P. art. 3783 does require the filing of an answer to a writ of quo warranto.[11] In fact C.Civ.P. art. 3783, providing for a written answer to a petition for a writ, was included in the Code of Civil Procedure because Article 2593 states that an answer is not required in summary proceedings "except as otherwise provided by law." [12] We are not dissuaded from this conclusion by the possibly gratuitous Footnote 3 in State v. James, supra to the effect that nothing in C.Civ.P. art. 3783 requires a written answer. See Footnote No. 2 herein. Minimally C.Civ.P. art. 3783 so requires an answer as to qualify under Article 7's provision that, filed with (or as in this case, after) the peremptory exception, it does not constitute a general appearance.
Plaintiffs' arguments concerning fairness, due process, reasonable opportunity to defend, or the given delay in which to produce witness are all irrelevant. In all instances where defendant appears personally or through counsel and files an exception to the jurisdiction of the court, defendant has been notified and seemingly has had an opportunity to present his defense. Yet our law sanctions this procedure as a means of protesting the court's jurisdiction without submitting thereto. C.Civ.P. art. 7; Stelly v. Quick Mfg. Inc., 228 So.2d 548 (La.App. 3d Cir. 1969).
Plaintiffs' third assignment of error is meritorious. Their suit should not have been dismissed. The quo warranto action can be brought as an ordinary action under the long arm statute if the proper service and citation are obtained. Therefore, plaintiffs should be allowed to amend their petition and cure defects in the service of process. Comment (b) C.Civ.P. art. 3781; C.Civ.P. art. 932.[13]Louisiana Power and Light Co. v. Ursin, 334 So.2d 559 (La.App. 4th Cir. 1976); Kachelmyer v. Ames, 335 So.2d 525 (La.App. 1st Cir. 1976); Boykin v. Lindenkranar, 252 So.2d 467 (La.App. 4th Cir. 1971).

Decree
For the foregoing reasons the judgment of the Court of Appeal insofar as it sustains defendant's exceptions to the jurisdiction of the trial court is affirmed; it is reversed insofar as it dismissed plaintiffs' lawsuit. The case is remanded to the trial court for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
MARCUS, J., concurs.
BLANCHE, J., concurs in the result.
DENNIS, J., dissents and assigns reasons.

Appendix
John O. Clay and Robert D. Clay are brothers who are contesting the rights to office in the Clay Oil & Gas Corporation. Their father owned all the shares of Clay's Park, Inc., an Ohio corporation which *40 owned and operated a recreational park in Ohio. John and Robert Clay each received one half of the voting stock of Clay's Park, Inc., on the death of their father. The brothers' wives and children received the non-voting stock of the corporation, divided equally between the two families.
In 1971 Clay's Park, Inc., was merged into Clay Oil and Gas Corporation, a Louisiana Corporation engaged in the oil and gas business. The two families maintained identical interests in the corporation after the merger. The Board of Directors of Clay Oil and Gas before this controversy began consisted of John and Robert Clay and their wives. It is not disputed that the board was deadlocked prior to a disputed shareholders' meeting.
On April 24, 1978, John Clay, acting as a shareholder, issued notice of an annual shareholders' meeting in Monroe, Louisiana at the registered office of the corporation. The notice stated that the purpose of the meeting was to hold an election of directors and to transact any business which might properly come before the board. Robert Clay and his son and John Clay, his wife, and daughter were present at the May 5th meeting. In addition to the shareholders, two attorneys representing John Clay and a court reporter were present.
Robert Clay objected to the presence of the attorneys and requested that he be given an opportunity to retain counsel. When this request was refused, Robert Clay and his son Richard left the meeting. The parties disagree whether the meeting had been called to order before Robert and Richard Clay left the meeting. John Clay, his wife and daughter continued the meeting despite Robert Clay's departure. These remaining shareholders elected Robert Clay, John Clay, and two other members of John Clay's family to the board of directors, giving the John Clay family three of the four votes on the board of directors.
A meeting of the newly elected board was scheduled for the next day, May 6, 1978. On May 6, 1978 the new directors (except Robert Clay who was absent) elected John Clay Chairman of the Board and Chief Executive Officer and President. The offices of Vice-President and Secretary-Treasurer were filled by members of the John Clay family. The board then passed a resolution naming the three officers of the corporation as the only corporate officials authorized to withdraw corporate funds from any financial institution.
Robert Clay refused to acknowledge the validity of the May 5, 1978 shareholders' meeting and the May 6, 1978 board of directors' meeting. Robert Clay filed suit in Ohio alleging that he was Chairman of the Board and Chief Executive Officer of Clay Oil and Gas, and was authorized to maintain possession and control of the corporate funds and records. Robert Clay also instituted a suit in Ohio to dissolve the corporation.
On July 21, 1978, Robert Clay issued a call for an annual shareholders' meeting to be held in Monroe, Louisiana at the registered office of the corporation on August 1, 1978. In response to this action John Clay and other members of his family filed a writ of quo warranto on July 31, 1978, directing Robert Clay to answer the petition and state by what authority he claimed the offices of Chairman of the Board and Chief Executive Officer, President, and Secretary-Treasurer. The suit sought an order forbidding the defendant Robert Clay from possessing the books and papers of the corporation and from acting as an officer of the corporation.
On August 3, 1978, Robert Clay received in the mail a certified copy of the petition for writ of quo warranto with attached order fixing the matter for hearing the amended petition and the writ, at his home in Canal Fulton, Ohio. The next day, August 4, 1978, defendant Robert Clay filed declinatory and dilatory exceptions in the trial court in Monroe, Louisiana. He amended these exceptions on August 7, 1978. The trial judge set August 9, 1978 for the hearing on the exceptions of insufficiency of service of process and lack of personal jurisdiction.
The trial court overruled defendant's exceptions at the hearing on August 9, 1978. *41 At that time defendant filed a notice of intention to apply to the Second Circuit for supervisory writs. The trial court fixed a return date for the writ application, but denied defendant's request for a stay pending a ruling on the writ application. The defendant then filed an answer and the case proceeded to trial. At the conclusion of the plaintiffs' case, the defense did not present testimony. The court left the trial open for two days to allow the defendant to present testimony, but defendant declined to produce evidence.
On August 16, 1978, the court signed a judgment granting plaintiffs all relief prayed for. On March 26, 1979 the Second Circuit Court of Appeal reversed the judgment of the trial court, on the grounds that the Louisiana long arm statute (R.S. 13:3201, et seq.) may not be utilized in connection with a summary proceeding at least where a defendant is not afforded the minimum delays he would be entitled to in ordinary proceedings.
DENNIS, Justice, dissenting.
I respectfully dissent. I am not convinced that the long arm statute can never be used in a summary proceeding, and I am certainly unwilling to announce such a rule under the facts of this case, as it is clear that the defendant received notice of the action pending against him and had sufficient opportunity to retain counsel who could prepare his defense and appear in court for him. Our long arm statute was passed with the obvious intent of giving our citizens the maximum access to nonresident defendants allowed under the constitutional restrictions of due process. La.R.S. 13:3201, Comment (a); Adcock v. Surety Research & Inv. Corp., 344 So.2d 969 (La. 1977). Due process is not offended when there is "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such a nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance. Mullane v. Central Hanover Bank and Trust Company, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873 (1950) [citations omitted]. Under the facts set forth in the Appendix to this case, it is plain that the defendant's notice met these constitutional requirements.
Moreover, I agree with the trial judge that it was of no statutory significance that there was no citation included in the service of process, since the writ of quo warranto which was attached to the petition contained substantially the same notices and requirements that a citation would have contained and therefore served the same purpose as a citation.
I would not be so niggardly in interpreting the provisions of the long arm statute as to find no room for the use of this method of obtaining jurisdiction in summary proceedings. In certain instances, the law provides for the use of summary proceedings because no relief lies by ordinary means or where the delay involved in obtaining relief may cause injustice. Cf. C.C.P. Article 3862. We must remember that our own citizens' interests in obtaining adequate and timely redress of wrongs committed against them are meant to be protected by the long arm statute, as well as the defendant's interests in adequate notice and time to make an appearance. We should not announce a rule which bars this sort of expedited relief even in cases where the nonresident defendant receives reasonable notice and is in a position to defend against the claim.
NOTES
[*] Chief Judge Paul B. Landry, Retired is sitting by Assignment as Associate Justice Ad Hoc in place of Tate, J., upon this case.
[1] Code of Civil Procedure, Article 3783 provides:

"A written answer to a petition for a writ shall be filed not later than the time fixed for the hearing."
[2] But see State v. James, 251 La. 913, 207 So.2d 389 (1968) where this Court upheld a trial court's decision in a summary mandamus proceeding that where defendant was not commanded or ordered to answer in writing but only commanded to appear and show cause, the court could rule on the mandamus action despite the fact that defendant filed no written answer. This Court stated in footnote 3 at 207 So.2d 392: "There is nothing in LSA-C.Civ.P. 3783 requiring defendant to file a written answer."
[3] Code of Civil Procedure, Article 5091 provides that where a defendant is a non-resident or absentee or an unemancipated minor or mental incompetent with no legal representative the court may appoint an attorney as curator or tutor ad hoc to receive service of process. An attorney may also be appointed to receive process under C.Civ.P. art. 5091 where no succession representative has been appointed and the heirs and legatees have not been sent into possession judicially, where the defendant's legal representative has died, resigned, been removed from office, or left the state permanently or where a defendant is a corporation or a partnership and cannot be served with process for any reason. And too, R.S. 13:3471 directs the court to order the officer attempting to serve a foreign corporation with no agents or employees within the state to serve the secretary of state (or one of his employees) as agent for the foreign corporation.
[4] Louisiana Revised Statutes 13:3474 and 13:3479 provide for service on the secretary of state as agent for non-resident motorists and watercraft operators.
[5] Code of Civil Procedure, Article 1235 provides:

"Service is made on a person who is represented by another by appointment of court, operation of law, or mandate, through personal or domiciliary service on such representative."
[6] But see Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) where the Supreme Court stated that the fiction that traditional in rem jurisdiction is anything other than an assertion of jurisdiction over the person can serve only to allow continued state-court jurisdiction that is fundamentally unfair. The Court concluded that all assertions of state-court jurisdiction must be evaluated by International Shoe fairness standards. Shaffer v. Heitner, 433 U.S. at 212, 97 S.Ct. 2569.
[7] Louisiana Revised Statute 13:3201 provides:

"A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from the nonresident's
(a) transacting any business in this state;
(b) contracting to supply services or things in this state;
(c) causing injury or damage by an offense or quasi offense committed through an act or omission in this state;
(d) Causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
(e) Having an interest in, using or possessing a real right or immovable property in this state; or
(f) Non-support of a child or spouse or a former spouse domiciled in this state to whom an obligation of support is owed and with whom the nonresident formerly resided in this state."
[8] Louisiana Revised Statute 13:3204 provides:

"A certified copy of the citation and of the petition in a suit under R.S. 13:3201 shall be sent by counsel for the plaintiff to the defendant by registered or certified mail, or actually delivered to the defendant by an individual designated by the court in which the suit is filed, or by one authorized by the law of the place where the service is made to serve the process of any of its courts of general jurisdiction.
"Service of process so made has the same legal force and validity as personal service on the defendant in this state." (emphasis provided)
[9] Louisiana Revised Statute 13:3205 provides:

"No default judgment can be rendered against the defendant until thirty days after the filing in the record of the affidavit of the individual who either:
(a) mailed the process to the defendant, showing that it was enclosed in the envelope properly addressed to the defendant, with sufficient postage affixed, and the date it was deposited in the United States mails, to which shall be attached the return receipt of the defendant; or
(b) actually delivered the process to the defendant, showing date, place, and manner of delivery."
[10] Louisiana Code of Civil Procedure, Article 7 provides:

"Except as otherwise provided in this article, a party makes a general appearance which subjects him to the jurisdiction of the court and impliedly waives all objections thereto when, either personally or through counsel, he seeks therein any relief other than:
(1) Entry or removal of the name of an attorney as counsel of record;
(2) Extension of time within which to plead;
(3) Security for costs;
(4) Dissolution of an attachment issued on the ground of the nonresidence of the defendant; or
(5) Dismissal of the action on the ground that the court has no jurisdiction over the defendant.
This article does not apply to an incompetent defendant who attempts to appear personally, or to an absent or incompetent defendant who appears through the attorney at law appointed by the court to represent him.
When a defendant files a declinatory exception which includes a prayer for the dismissal of the action on the ground that the court has no jurisdiction over him, the pleading of other objections therein, the filing of the dilatory exception therewith, or the filing of the peremptory exception or an answer therewith when required by law, does not constitute a general appearance." (emphasis provided)
[11] Code of Civil Procedure, Article 3783 provides:

"A written answer to a petition for a writ shall be filed not later than the time fixed for the hearing."
[12] Comment (c) C.Civ.P. art. 2593 indicates that C.Civ.P. art. 2593 codifies the general rule of Code of Practice jurisprudence that summary proceedings require no answer except where specific codal or statutory authority provides to the contrary. Thus the Comment to Code of Civil Procedure, Article 3783:

"This article is necessary in view of Article 2593, supra."
[13] Code of Civil Procedure, Article 932 provides:

"When the grounds of the objections pleaded in the declinatory exception may be removed by amendment of the petition or other action of plaintiff, the judgment sustaining the exception shall order the plaintiff to remove them within the delay allowed by the court.
If the grounds of the objection cannot be so removed, or if the plaintiff fails to comply with an order requiring such removal, the action shall be dismissed; except that if it has been brought in a court of improper jurisdiction or venue, the court may transfer the action to a proper court in the interest of justice." (emphasis provided)